IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| DERRICK FRETZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:12cv00044 |
| | ) | |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Derrick Fretz ("Fretz") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Fretz alleges that that the Commissioner erred (1) in finding his deafness in one ear, depression, anxiety, and fibromyalgia to be non-severe impairments, (2) in rejecting the opinion of Fretz's treating physician, and (3) in discrediting Fretz's subjective complaints. Fretz also asserts that the Appeals Council erred by failing to explain what consideration, if any, it gave to additional evidence Fretz submitted.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1382(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

substantial evidence supports the ALJ's determination that certain impairments were non-severe, and that the ALJ did not err in failing to provide an explanation for why he did not give controlling weight to Fretz's treating physician. Accordingly, I **RECOMMEND DENYING** Fretz's Motion for Summary Judgment (Dkt. No. 9), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 11).

# I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Fretz failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Fretz bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent

2

engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; [2] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991).

## II.

---

[2] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

## Social and Vocational History

Fretz was born on July 13, 1967 (R. 41) and was a younger individual on his alleged onset date. 20 C.F.R. § 404.1563(c). Fretz completed his GED and nine months of college. R. 41. He previously worked as a waiter, a construction worker, and as a tree climber and cutter for a tree removal service. R. 197. Fretz reported that during the relevant period, his activities were limited to taking his medication, reading, watching television, walking his dog, cleaning dishes and laundry, napping, helping his children with their homework, and attending his children's sports practices and games. R. 218.

## Claim History

Fretz protectively filed for DIB on June 12, 2009, and SSI on June 16, 2009, claiming that his disability began on June 1, 2009. R. 23. His date last insured is March 31, 2014. R. 179. The Commissioner denied Fretz's application initially and upon reconsideration. R. 91, 102. On February 9, 2011, Administrative Law Judge ("ALJ") Irving A. Painin held a hearing at which Fretz was represented by counsel, and both Fretz and a vocational expert testified. R. 38.

On February 22, 2011, the ALJ denied Fretz's claims, finding that Fretz suffered from the severe impairments of back disorder, neck disorder, and bilateral shoulder disorder (R. 25) and that Fretz had non-severe impairments of deafness in his left ear, supraventricular tachycardia (atrial fibrillation), peripheral vascular disease, fibromyalgia, depression, and anxiety. R. 26. The ALJ further found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 27. The ALJ determined that Fretz retained the RFC to perform light work, limited to: (1) working no more than four hours of standing and walking in an 8-hour workday with (2) occasional postural activities (3) occasional overhead reaching with both arms (4) no climbing or exposure to heights or hazards and (5) no excessive vibrations. R. 28. The ALJ found Fretz unable to perform his past relevant work (R. 30) but that

4

given Fretz's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy such as produce sorter, parking cashier, and food and beverage order clerk, which Fretz can perform. R. 30–31. As such, the ALJ concluded that Fretz is not disabled. R. 31.

Fretz appealed the decision of the ALJ to the Appeals Council and submitted additional evidence in his request for review. On July 17, 2012 the Appeals Council denied Fretz's request to review the ALJ's decision, thereby rendering the decision of the ALJ the final decision of the Commissioner. R. 1–5. On September 14, 2012, Fretz filed his complaint in this court seeking judicial review of the ALJ's decision (Dkt. No. 1).

### III.

Fretz alleges that that the ALJ erred (1) in finding his deafness in one ear, depression, anxiety, and fibromyalgia to be non-severe impairments, (2) in rejecting the opinion of Fretz's treating physician, and (3) in discrediting Fretz's subjective complaints. Fretz also asserts that the Appeals Council erred by failing to explain what consideration, if any, it gave to the additional evidence submitted at the appeal level.

### **Non-Severe Impairments**

Fretz argues that the ALJ erred by finding some of Fretz's impairments to be non-severe, including his left ear deafness, depression and anxiety, and fibromyalgia. An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. § 404.1521(a). Fretz, as claimant, bears the burden of proof in showing that these impairments were severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,

5

irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).

Fretz argues that the ALJ erred at step two in determining his severe impairments, causing a fatal defect in the ALJ's decision as a whole and that this error is grounds for reversal or remand. Fretz relies on a recent opinion from the Middle District of Pennsylvania, Weitzel v. Colvin, 2013 WL 4510308 (M.D. Pa. Aug. 23, 2013), to support his claims. Notwithstanding the fact that the opinion is non-binding, non-Fourth Circuit law, Weitzel is readily distinguishable from the facts here. In Weitzel, the ALJ failed to address in *any* way at the step two threshold ailments relating to the claimant's cervical spine and left hip and leg. Id. at *7–8. The court ruled that the failure to address such conditions made the ALJ's decisions defective at step two and step four in the evaluation process. Id. at *7. To the contrary in the instant case, the ALJ fulfilled his duty of analyzing the evidence of record and addressed each of Fretz's disputed impairments at step two, including his left-ear deafness, depression and anxiety, and fibromyalgia. The ALJ weighed the evidence in the record and determined them to cause no significant limitations. R. 26–27. Accordingly, the ALJ's evaluation process was not defective as it was in Weitzel.

Substantial evidence supports the conclusion reached that the problems Fretz experienced from his deafness, depression, anxiety, and fibromyalgia constitute non-severe impairments. With regard to his left ear deafness, there is no evidence in the record to suggest that Fretz was disabled by left ear deafness, a condition Fretz has had since birth. There is no history of treatment of Fretz's deafness, no doctor limited his activities because of his deafness, and Fretz clearly was able to work with his condition. Notably, Fretz failed to report any hearing impairment in his function report. R. 218–225. Fretz worked a number of years in construction as a drywall finisher, in the restaurant industry as a waiter, and a tree climber and cutter. R. 197. Nothing in the record indicates his left ear impairment hindered his functioning in these

6

positions. None of Fretz's medical providers reported any difficulty in communicating with Fretz as a patient, and nothing from the hearing transcript suggests that Fretz had trouble hearing the questions posed to him by the ALJ. Fretz bore the burden of proof on whether his left ear deafness was a severe impairment, and he has not shown that the deafness is any more than a slight abnormality with only minimal impact on his ability to work.

Similarly, substantial evidence supports the ALJ's finding that Fretz's anxiety and depression are non-severe and thereby have only a minimal effect on his ability to work. When initially filing for disability Fretz reported only physical impairments, and stated in his function report that he handles stress "well—normally". R. 196. Absent from the record is any detailed course of treatment or specialist's opinion corroborating Fretz's claimed mental health limitations. Fretz was diagnosed with anxiety by primary care providers at the Lackey Free Clinic, but the focus of their treatment was Fretz's physical ailments and their records provide little detail about Fretz's mental health. R. 326–27, 316–17, 314–15. Dr. Bruce Tetalman noted Fretz's anxiety and depression at several appointments in late 2010 and early 2011, but even then, Fretz's chief complaints were physical. R. 332, 341, 346. When separately assessed by two state agency physicians in January and May 2010, Fretz denied feeling depressed, and did not report any mental limitations or mental health treatment to either physician. Both expressed his mental condition as non-severe. R. 73, 75, 86, 99.

At the hearing, Fretz only briefly testified regarding his mental health, stating that he gets stressed easily, has anxiety, and doesn't "do well" when his employers yell at him. R. 46. Fretz did not mention any depression symptoms at the hearing, other than to say that his mood is "up and down" but that he is a little calmer due to his prescriptions for Cymbalta and Atvian. R. 52. Although Fretz mentioned that he was undergoing mental health counseling at the time of the hearing, no records from these sessions have been provided for the record. R. 46. At no point

7

does Fretz allege that his mental health affects the myriad of daily activities he reported doing. The evidence of record provides a substantial basis for the ALJ's finding that his anxiety and depression were non-severe.

The ALJ's finding that Fretz's fibromyalgia condition is non-severe is likewise supported by substantial evidence. Although Fretz was diagnosed as having fibromyalgia by both his primary care physicians and Dr. Tetalman (R. 286–87, 288–89, 326–29, 332–33) the record does not suggest that the condition caused any exertional restrictions independent of Fretz's back, neck and shoulder impairments that were deemed severe and accounted for in the ALJ's RFC. Indeed, Dr. Tetalman identifies the condition as secondary fibromyalgia in his opinion letter, suggesting its connection to pre-existing injury or condition. R. 359. In any event, if the secondary fibromyalgia caused distinguishable limitations, the ALJ took this into account when he developed Fretz's RFC. Therefore, the ALJ did not err in determining Fretz's fibromyalgia as non-severe.

Even assuming the ALJ erred in determining the disputed impairments non-severe at step two, the error would be harmless. Brooks v. Astrue, 2012 WL 1022309, at *11 (W.D. Va. Mar. 26, 2012) (finding harmless error where ALJ considered effects of all of claimants severe and non-severe impairments in subsequent steps). Having considered the evidence regarding Fretz's deafness, mental health, and fibromyalgia at step two, the ALJ considered the entire record of impairments when determining Fretz's RFC. The ALJ did so in evaluating Fretz's complaints and Dr. Tetalman's opinion as treating physician. R. 29. Thus, any defect in subsequent steps would be harmless error, and remand is not warranted on these grounds.

**Treating Physician**

Fretz next alleges that the ALJ erred by giving the opinion of his treating physician, Bruce Tetalman, M.D., little weight and finding that Dr. Tetalman's opinions were unsupported

and inconsistent with the record. R. 29. Dr. Tetalman is a pain management physician who saw Fretz for several months beginning in November 2010 before he rendered an opinion in January 2011 that Fretz is "permanently disabled." R. 346–58, 341–45, 332–33. The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, 2011 WL 1229781, at *2 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citations omitted).

In this case, the ALJ's decision to give Dr. Tetalman's opinion partial weight is supported by substantial evidence. The relevant medical evidence of record shows that Fretz has a history of shoulder and back pain stemming from an injury as a tree climber. Fretz has undergone left shoulder surgery and has pain in his right shoulder and lower back. In late April into May 2009, Fretz made a series of visits to Sherri L. Wright, D.C. regarding his shoulder and back pain. R. 259–64. The records from the chiropractor show that Fretz saw Dr. Wright thirteen times. He

regularly complained of pain in his low back and right shoulder when he would climb trees as part of his work as a tree trimmer.

Fretz also reported his pain complaints to the physicians and staff at the Lackey Free Clinic. On July 20, 2009, Fretz complained of diffuse arthralgia in the wrist, shoulder, elbow, waist, back and knees likely secondary to years as a tree climber. Fretz was diagnosed with arthralgia and moderate degenerative joint disease. R. 302. At an August 2009 visit Fretz saw a nurse practitioner, who additionally diagnosed Fretz with anxiety, insomnia, and tobacco abuse. R. 299. Providers at the Lackey Free Clinic treated Fretz conservatively with medication to address his complaints of pain. Fretz reported on October 14, 2009 that he twisted his back while working on his car causing him to develop some muscle spasms. R. 294–95. The examining nurse practitioner prescribed Toradol and physical therapy for this exacerbation. X-rays on October 28, 2009 revealed degenerative changes in the lower cervical spine with mild-moderate foraminal stenosis bilaterally at C6-7. X-rays of the left shoulder were normal. R. 276–278. At the beginning of November 2009, Fretz was referred to an orthopedist to examine instability in his sacroiliac joint. R. 293.

On January 7, 2010, state agency physician Michael Cole, D.O. provided an RFC assessment, identifying Fretz's exertional limitations to include occasionally lifting and carrying 20 pounds, frequently lifting and carrying 10 pounds, the ability to both stand and sit for about 6 hours out of an 8-hour work day, and limited overhead reaching. R.75–76. Dr. Cole noted Fretz's history of treatment for back disorders, but stated that Fretz's strength was adequate, his daily activities were not significantly limited, and that he should limit repetitive and overhead work. R. 75. Dr. Cole assessed Fretz as not disabled. A second state agency physician, Carolina Longa, M.D., later assessed Fretz and made identical functionality findings, also determining Fretz was not disabled. R. 99–102. Both state agency physicians found that Fretz had not received any

mental health treatment, reported no mental limitations, and determined that his mental condition was non-severe. R. 75, 99.

On January 21, 2010, Fretz again visited Lackey Free Clinic and had normal range of motion in his neck, shoulders, elbows, wrists, and hands, and 50% normal range of motion in his lumbar spine. R. 288. A February 8, 2010 imaging study found degenerative changes with mild spondylosis at several spine levels, but no spondylolysis, spondylolithesis, fractures, dislocations, or bony lesions. R. 313. An MRI of Fretz's left shoulder the same month indicated shoulder tendinitis but no rotator cuff tear. R. 284, 312. In March 2010, providers at the Lackey Free Clinic found limited range of motion and rotation in Fretz's left shoulder in addition to degenerative disc disorder and a chronic left shoulder rotator cuff tear, diagnoses that were changed to bursitis and fibromyalgia the next month following the aforementioned imaging results. R. 287, 285. Dr. Treishmann at the Free Clinic recommended that Fretz have a steroid injection for the shoulder, and that he consult with a physiatrist and pain management specialist.

On May 18, 2010, Fretz reported pain in his left foot and stated that he infrequently took his Tramadol and Flexeril, but instead self-medicated with six to eight beers. R. 326. Visits to the Free Clinic in July, August, and October of 2010 also yielded diagnoses of lower back pain and anxiety. R. 324–35, 322–23, 316–17.

Fretz began seeing Dr. Tetalman, a pain management physician, in November 12, 2010. R. 346–58, 341–45, 332–33. At the initial visit, Dr. Tetalman diagnosed Fretz as having a herniated lumbar disc without any imaging studies, as well as sacroiliac joint dysfunction, depression, rotative cup tendinitis [sic], and generalized orthoarthritis. R. 347. Dr. Tetalman ordered x-rays of both wrists and hands, an MRI of his lower back ("to rule out [a herniated disc]"), and an evaluation by an orthopedist. However, no subsequent x-rays or MRIs appear in Dr. Tetalman's files. At a follow up appointment later that month, Dr. Tetalman found Fretz very

11

tender to palpitation around the L4-L5-S1 spinal cord levels and that Fretz had more range of motion on flexion than extension. R. 341. Dr. Tetalman prescribed Oxycodone, increased the dosage of Neurontin, and recommended that Fretz return to the Lackey Free Clinic to have them increase his Cymbalta dosage. R. 342.

On January 11, 2011, Dr. Tetalman completed a medical source statement detailing his opinion of Fretz's physical and mental health limitations. R. 346–58 On that date, Dr. Tetalman indicated that Fretz could stand continuously for only 15 minutes at a time; could sit, stand and walk for less than 2 hours of an 8-hour workday; could occasionally lift less than 10 pounds on a regular basis; would require unscheduled breaks of at least 15 minutes four times a day at a full-time job; and that Fretz's mental health limitations would be severe if he were to be placed in a full-time job, leading to a number of other functional limitations ranging from mild to extreme. R. 356–357. Dr. Tetalman stated in a later opinion letter that, "[i]n light of his multiple pathologies, I feel the patient is permanently disabled." R. 359. In determining Fretz's RFC, the ALJ gave Dr. Tetalman's opinions little weight, finding the opinions unsupported or inconsistent with the record. R. 29.

Having reviewed the record as a whole, I find substantial evidence to support the ALJ's decision to give Dr. Tetalman's opinion little weight. First, Dr. Tetalman's opinions are largely contradicted by the objective medical tests conducted on Fretz during the relevant time period, which show a less dire depiction of Fretz's back and shoulder ailments. The x-rays completed in October 2009 showed that Fretz had only mild degenerative disc disorder and a normal left shoulder. X-rays of Fretz's spine from February 2010 found degenerative changes with only mild spondylosis at several spine levels. A shoulder MRI that same month showed tendinitis with no rotator cuff tear. Dr. Tetalman ordered Fretz in November 2010 to obtain additional x-rays and an MRI, but the record does not contain any evidence indicating that Fretz underwent those tests.

Physical examinations, such as that performed on January 21, 2010 by treating providers at the Lackey Free Clinic, revealed that Fretz had largely normal range of motion in his upper body, only finding limited range of motion in his lower back. This examination and others comport more with the two separate evaluations by state agency physicians, Dr. Cole and Dr. Longa, than Dr. Tetalman's assessment. Both Dr. Cole and Dr. Longa found identical functional capacities that took into account Fretz's degenerative joint and disc disorders and further found Fretz to be not disabled.

Furthermore, Fretz's own statements cut against the opinions rendered by Dr. Tetalman. At the hearing before the ALJ, Fretz testified that Dr. Tetalman's treatment had been successful in relieving his physical pain, helped him function better, and that his prescriptions have made his nerves calmer. R. 45, 52. In his applications for benefits, Fretz stated a number of daily activities that he was able to perform, including taking out his dog, doing laundry and dishes, minor household and vehicle repairs, and engaging in woodworking as a hobby. R. 218, 220, 222. These admissions undercut Dr. Tetalman's opinion that Fretz is disabled.

Viewed as a whole, the evidence in record the reflects that Fretz had chronic back, neck, and shoulder ailments, but that the conclusions of functionality drawn by Dr. Tetalman are contrary to the objective medical evidence, state agency physician opinions, and Fretz's own representations in the record. The ALJ carefully and reasonably considered the opinion of Dr. Tetalman and found it to be unsupported or inconsistent with such evidence. Given the evidence set forth above, I find substantial evidence to support the ALJ's decision to give Dr. Tetalman's opinion little weight when determining Fretz's RFC.

## **Credibility**

Fretz contends that the ALJ improperly discounted the credibility of Fretz's subjective pain complaints. At the administrative hearing before the ALJ, Fretz testified that his pain was

unbearable when standing for long periods of time, he requires lots of rest and changes of position, he gets fatigued after 10 to 15 minutes of standing, has difficulty walking, his upper back and shoulders have a constant dull pain, his lower back has very sharp pain, and that he cannot perform many of his daily activities pain-free. R. 42, 46, 47, 50, 52.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Fretz's subjective allegations of disabling pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Fretz met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Fretz's ability to work. Id. at 594-95.

The ALJ found that Fretz had medically determinable impairments that could be reasonably expected to produce his claimed symptoms, but that Fretz's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible in light of his diagnoses, course of treatment, and medications, the residual functional capacity assessments and progress notes of record, and his activities of daily living and social functioning, which do not support his allegations." R. 28.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). After a review of the record as a whole, I find that substantial evidence supports the ALJ's

14

determination that Fretz's testimony regarding his disabling pain is only partially credible, and that Fretz is capable of performing the limited range of light work set forth in the ALJ's opinion.

For the same reasons that the ALJ's decision to accord Dr. Tetalman's opinion little weight was supported by substantial evidence, the ALJ's finding of only partial credibility of Fretz's testimony was likewise supported in the record. The evidence in the record does not substantiate the degree of limitation that Fretz alleges given the objective medical tests, his self-reported daily activities, and lack of credible medical opinion. The objective medical tests, including x-rays and an MRI performed in October 2009 and February 2010, showed only mild abnormalities. R. 274, 312–13. Indeed, Fretz was sent for an MRI on his left shoulder to examine a suspected rotator cuff tear, which was revealed to be only tendinitis upon interpretation of the results. R. 284, 312–13. Assessments by state agency physicians found Fretz to be of adequate strength, that he'd undergone only conservative treatment, and that his daily activities are not significantly limited by his condition. R. 75, 99. An exam at the Lackey Free Clinic in January 2010 revealed that Fretz had normal range of motion in his neck, shoulders, elbows, wrists, and hands, and 50% normal range of motion in his lumbar spine. R. 288. Fretz testified at the administrative hearing that the treatment he had been receiving was relieving the pain and helping him to function better. R. 45.

Fretz, in his brief, focuses on the ALJ's reliance on his reported daily activities, which he characterizes as limited, sporadic, and transitory, and therefore not indicative of his ability to work within the RFC propounded by the ALJ. Pl's. Br. Summ. J. 13–17. The ALJ did rely on Fretz's daily activities in ruling. R. 30. However, this was but one factor in the ALJ's analysis. Even so, the record reflects that Fretz engages in a wide range of activities that bear on the credibility of his subjective pain complaints. Fretz reported a typical day in his function report to include going outside daily, taking the dog out, cleaning dishes, doing the laundry, helping his

kids with homework, going to his kid's sporting events. R. 218, 221. He also reported performing minor household repairs, minor vehicle maintenance, woodworking, attending church group and married couple's group. R. 220. At the administrative hearing, he testified that he goes grocery shopping, cooks, takes the trash out, mops, lightly vacuums, and is able to bathe, dress, and eat by himself. R. 48–49. Although these daily activities by themselves are not to be considered substantial gainful activity, the level and degree of the activities have some bearing on Fretz's ability to function in a vocational setting and may properly be considered by an ALJ. 20 C.F.R. §§ 404.1529(c)(3)(i) and 404.1572(c).

The ALJ's decision did not solely rely on Fretz's reported daily activities in discrediting Fretz's testimony. Rather, the combined weight of the evidence from objective medical tests, self-reported daily activities, and credible medical opinions provides substantial evidence supporting the ALJ's credibility finding. The ALJ did not wholly discount Fretz's subjective complaints and find him pain free. The ALJ in fact found Fretz to suffer from severe impairments that limit his functionality in a significant way. The issue, however, is not whether Fretz has physical impairments or experiences symptoms, but whether those impairments and symptoms prevent him from performing the limited range of light work provided for in the RFC. See Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays v. Sullivan, 907 F.2d 1453, 1457–58 (4th Cir. 1990)) ("An individual does not have to be pain-free in order to be found 'not disabled.'").

The standard of review on this appeal is substantial evidence. Furthermore, credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v.

Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). In the instant case, the ALJ's credibility determination is supported by substantial evidence, and should not be disturbed.

### **Appeals Council Rationale**

Fretz argues that remand is warranted to consider new evidence he submitted to the Appeals Council. The only evidence submitted by Fretz to the Appeals Council was a Medical Report for General Relief, Medicaid, and Temporary Assistance for Needy Families by Carol Jo Osinski, a family nurse practitioner at the Lackey Free Clinic dated December 13, 2011. R. 360. The report shows Fretz's diagnosis of chronic back pain and a lateral tear of his left shoulder requiring surgery, and assesses Fretz as unable to work as a result. The Appeals Council considered the report, and found that it "[did] not provide a basis for changing the Administrative Law Judge's decision." R. 2. I find that this evidence does not warrant remand.

The regulations permit a claimant to submit "new and material evidence" to the Appeals Council. Evidence is new if it is not duplicative or cumulative; it is material if there is a reasonable possibility it would have changed the outcome of the Commissioner's decision. Meyer v. Astrue, 662 F.3d 700, 704–05 (4th Cir. 2011) (citing Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). The Appeals Council will consider the additional evidence "only where it relates to the period on or before the date of the [ALJ's] hearing decision." Id. (citing 20 C.F.R. § 416.1470(b)). Contrary to Fretz's contention, the Appeals Council was not, however, required to provide express, specific findings on the record regarding the additional evidence submitted by Fretz. As the Fourth Circuit clarified in Meyer, "nothing in the Social Security Act or the regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." Meyer, 662 F.3d at 705. In this case,

the Appeals Council's consideration of the additional evidence submitted by Fretz and denial of review met its obligations under the agency's regulations.

Fretz has the burden of demonstrating that a remand is appropriate given any new and material evidence. Sunderland v. Colvin, 5:12CV00020, 2013 WL 4501418, at *8–9 (W.D. Va. Aug. 22, 2013) (citing Meadows v. Astrue, 5:08-CV-01129, 2010 WL 1380117, at *3 (S.D.W. Va. Mar. 31, 2010)). Fretz has not demonstrated that remand is appropriate. He has not articulated why the new evidence submitted to the Appeals Council is "new and material" beyond stating that it was a "new medical source opinion" that was "supportive of disability, and therefore highly relevant and probative. Pl's. Br. Summ. J. 21. Regardless, the evidence is neither new nor material. The report from the Lackey Free Clinic contains largely the same assessment of Fretz's condition that is contained in the series of progress notes throughout record. It provides no information beyond already known diagnoses and a bare conclusion from a nurse practitioner that Fretz cannot work. It contributes no new evidentiary value to the record. Moreover, given the substantial evidence in the record supporting the ALJ's decision, there is no reasonable possibility that it would have altered the outcome of the case. As such, the evidence is not material and remand is not warranted.

## Conclusion

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of

record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

            Enter:  January 21, 2014

            *Robert S. Ballou*

            Robert S. Ballou
            United States Magistrate Judge